IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FRANCIS YOMI,

    Plaintiff,

    v.

XAVIER BECERRA, in his capacity as
Secretary of Health and Human Services,

    Defendant.

Case No. 21-2224-DDC-ADM

**MEMORANDUM AND ORDER**

Pro se plaintiff Francis Yomi ("Yomi") brings this employment-discrimination case asserting violations of Title VII of the Civil Rights Act of 1964. Yomi alleges that supervisors at his former employer, the U.S. Food and Drug Administration ("FDA"), discriminated against him based on his race and national origin. Because the FDA is an agency of the U.S. Department of Health and Human Services ("HHS"), Yomi properly sues Xavier Becerra ("Becerra") in his capacity as Secretary of HHS.[1] This matter is now before the court on Becerra's Motion to Compel. (ECF 171.) By way of this motion, Becerra asks the court to overrule Yomi's objections to Becerra's First Request for Production of Documents and First Set of Interrogatories, and to compel Yomi to provide complete, non-evasive responses, as well as an appropriate verification of the same. As explained below, this motion is granted, but with certain document requests narrowed to only relevant information.

---

[1] Yomi's complaint originally named the FDA as defendant, but the court found the FDA immune from suit and determined that the proper defendant is Becerra, in his official capacity as Secretary of HHS. (ECF 48.)

I.     BACKGROUND

This action arises from Yomi's probationary employment with the FDA. In 2015, Yomi worked as a Consumer Safety Officer ("CSO") in the FDA's office in Kansas City, Kansas. Yomi's complaint alleges that his supervisors, Nadine Nanko ("Nanko"), Dina West ("West"), and Gerald Bromley ("Bromley"), harassed him, gave him extra assignments, and denied him opportunities because he is an African-American and originally from Cameroon. Yomi further alleges his supervisors retaliated against him when he complained about the hostile work environment. Yomi resigned from his employment with the FDA in September 2015.

Yomi filed this action in May 2021. Because Yomi sought reconsideration and/or review of a number of initial orders in the case (*see* ECF 10, 15, & 36), discovery did not begin until December 2021. Becerra served Yomi with a First Request for Production of Documents ("RFPs") on December 2, 2021, and a First Set of Interrogatories ("Interrogatories") on January 13, 2022. (ECF 41, 83.) Yomi substantially responded to the RFPs on January 24[2] and responded to the Interrogatories on February 13. (ECF 172-2, 172-3.) In both responses, Yomi asserted a number of improper, conditional, and boilerplate objections, but he produced some documents and answered some interrogatories subject to those objections. The parties subsequently engaged in meet-and-confer efforts in an attempt to resolve their discovery disputes. When that failed, the court convened a pre-motion discovery conference on March 30. (ECF 159.) Based in part on Yomi's tone during the conference, it quickly became apparent that the court would not be able to help the parties resolve their disputes informally. So the court granted Becerra leave to file the current motion to compel.

---

[2] This response was timely under an extension granted by the court. (ECF 64.)

## II. TIMELINESS OF MOTION

Because timeliness is a threshold issue, the court first addresses this aspect of Becerra's motion before considering its merits. District of Kansas Local Rule 37.1(b) requires that any motion to compel "be filed and served within 30 days of the default of service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause."[3] As noted above, Yomi served his responses to the RFPs on January 24 and to the Interrogatories on February 13, making Becerra's motion to compel with respect to those responses due by February 23 and March 15, respectively, or another date for good cause shown. Becerra filed the current motion to compel responses to both sets of discovery on April 7. This was beyond the applicable 30-day deadlines. The court therefore turns to whether there is good cause to extend those 30-day deadlines so that Becerra's motion is deemed timely.

---

[3] When the 30-day period has passed, some judges in this district have required the moving party to establish excusable neglect, rather than good cause. *See, e.g., Auto-Owners Mut. Ins. Co. v. Bricks & Stones, LLC*, No. 20-2365-JWB, 2021 WL 1166053, at *2 (D. Kan. Mar. 26, 2021). In doing so, these judges have relied on Federal Rule of Civil Procedure 6(b)(1)(B) and District of Kansas Local Rule 6.1(a), which provide that a party must show excusable neglect when an act must be done within a specified time and that time has expired. However, nothing in the plain language of Local Rule 37.1(b) requires a party to file a motion for an extension of time before the 30-day period expires or requires a showing of excusable neglect once the 30-day period has passed. Rather, the undersigned construes the "specified time" under Local Rule 37.1(b) to file a motion to compel to be (1) within 30 days or (2) another period when good cause is shown—as the rule explicitly specifies these time periods. When a party shows good cause to extend the deadline, it acts within the specified time and therefore does not trigger the excusable-neglect standard. The "good cause" reference in Local Rule 37.1(b) is not unlike Federal Rule of Civil Procedure 16(b)(4), which provides that a scheduling order may be modified for good cause shown. In that context, the Tenth Circuit has applied the good-cause standard—and not the excusable-neglect standard—when a scheduling-order deadline has passed. *See, e.g., Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) ("After a scheduling order deadline, a party seeking leave to amend must demonstrate . . . good cause for seeking modification under Fed. R. Civ. P. 16(b)(4)[.]").

A party may demonstrate good cause for an extension of the motion to compel deadline "by showing it acted diligently in attempting to resolve the discovery dispute." *Adams v. Symetra Life Ins. Co.,* No. 19-mc-401-EFM, 2020 WL 489523, at *3 (D. Kan. Jan 28, 2020). In examining diligence, judges in this district often consider both the length of delay and whether the parties were engaging in ongoing meet-and-confer efforts to resolve or narrow the dispute. *See, e.g., Auto-Owners*, 2021 WL 1166053, at *3. In this case, both criteria favor Becerra.

Becerra filed his motion within six weeks of the deadline and during the discovery period. During that time, the parties were in regular communication with each other and with the court about Yomi's discovery responses. On February 18, Becerra emailed Yomi a detailed "meet and confer" letter regarding Yomi's responses and objections to the RFPs. (ECF 172-4.) On February 22, the court granted Becerra's unopposed motion to extend his deadline to file a motion to compel regarding these RFPs. (ECF 122.) That same day, Becerra emailed Yomi a "meet and confer" letter regarding his responses and objections to the Interrogatories. (ECF 172-5.) The parties exchanged several emails and correspondence throughout February and March regarding disputes over Yomi's responses and objections to both sets of discovery. (ECF 172-6, 172-7.) On March 14, before the 30-day deadline expired, Becerra contacted the undersigned judge's chambers to request a discovery conference. The court conducted a discovery conference on March 30 and granted Becerra's request to file the current motion. (ECF 159.)

Given the short delay and the fact that Becerra was diligent in meeting and conferring with Yomi about his discovery responses, good cause exists to find Becerra's motion timely under Local Rule 37.1(b) and to consider it on its merits.

### III. ANALYSIS

#### A. RFP Objections Based on Vagueness, Overbreadth, and Undue Burden

Becerra first moves the court to compel Yomi to fully respond to RFP Nos. 2-4.  These sought (1) documents and recordings created by Yomi relating to his allegations that he was discriminated and retaliated against and suffered a hostile work environment; (2) notes and recordings that document any allegedly discriminatory, retaliatory, or hostile meeting, conversation, or interaction that Yomi had with FDA supervisors Nanko, West, and/or Bromley; and (3) documents and social media communications that Yomi sent or received regarding Nanko, West, and/or Bromley.  (ECF 172-2, at 1-2.)  Yomi objected to each of these RFPs on the grounds that it was vague, overbroad, and burdensome.  (*Id.*; ECF 172-6, at 5-7.)  Becerra moves the court to overrule these objections and compel Yomi to produce all responsive documents.

As to RFP Nos. 2 and 3, Yomi did not reassert his vagueness, overbreadth, and undue burden objection in response to Becerra's motion to compel.  "[O]bjections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned." *Kannaday v. Ball*, 292 F.R.D. 640, 644 (D. Kan. 2013); *see also Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404, 2011 WL 13233153, at *2 (D. Kan. Sept. 28, 2011) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned." (internal quotations and citation omitted)).  Accordingly, these objections are overruled.

Yomi did, however, reassert an undue burden objection to RFP No. 4.  Yomi states that he has 471 responsive emails and producing them would be burdensome.  As the party objecting to discovery, Yomi bears the burden to show facts justifying his objection by demonstrating that the time or expense involved in responding to the discovery request is unduly burdensome.  *See Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV, 2018 WL 3055869, at *3

5

(D. Kan. June 20, 2018) (quoting *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002)).  This imposes an obligation on Yomi "to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents." *Id.*  A party asserting undue burden is generally expected to present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.  *See Fish v. Kobach*, Nos. 16-2105-JAR & 15-9300-JAR, 2016 WL 893787, at *1 (D. Kan. March 8, 2016); *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004); *Klesch & Co. Ltd. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003) (ruling objecting party cannot sustain burden with boilerplate claims that requested discovery is burdensome); *McCoy v. Whirlpool Corp.*, 214 F.R.D. 642, 646 (D. Kan. 2003) (overruling undue burden objection based in part on lack of affidavit or other proof).

Yomi provides only conclusory allegations.  He has not offered any detailed explanation, affidavit, or other evidence demonstrating that he will suffer undue burden and expense if he complies with RFP No. 4.  Yomi's response to the motion simply states that he does "not have sufficient money" to produce the responsive emails, and that Becerra knows it.  (ECF 183, at 5.) But this conclusory statement provides no details about the expense Yomi would incur to produce the emails.  Without more from Yomi, the court can only conclude that producing less than 500 emails, particularly by electronic means, would have limited costs, if any at all.  Yomi's undue burden objection to RFP No. 4 is therefore overruled because it is unsupported.[4]

---

[4] To the extent Yomi asserted relevance objections in his supplemental response to RFP Nos. 2-4, those objections are addressed below.

### B.   Requests for Production of Documents: Relevance Objections

Next, Becerra asks the court to overrule Yomi's relevance objections to many of the RFPs. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). At the discovery phase, what is "relevant" is broadly construed. *See Erickson, Kernell, Deruseau, & Kleypas v. Sprint Sols., Inc.*, No. 16-mc-212-JWL, 2016 WL 3685224, at *4 (D. Kan. July 12, 2016). "[A]ny matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case" will be deemed relevant. *Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), and ruling the *Oppenheimer* standard still relevant after the 2015 Amendment to Rule 26(b)(1)). *See also Waters v. Union Pacific R.R. Co.*, No. 15-1287-EFM, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) ("Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." (internal quotations and citation omitted)).

Grouping the challenged RFPs into loose categories, the court applies this relevance standard below.

#### 1.   RFP Nos. 2-10 and 26

Becerra's RFPs Nos. 2-10 and 26 sought documents reflecting communications between Yomi and third parties that reference his allegations that FDA employees discriminated against,

retaliated against, or harassed him. (ECF 172-2, at 1-5 and 10-11.) Yomi objected to these requests on the ground that they are not relevant.[5]

Given the broad scope of relevance at the discovery stage, the court has no trouble finding Yomi's communications to third parties about the very claims he asserts in this action are relevant. Yomi argues that, to the extent he shared information about this case with Dr. Babatunde Ojo ("Ojo"), a plaintiff in a separate discrimination case against the FDA that is pending in Iowa, such information is not relevant, and Becerra is only attempting to gather evidence to use against him in a lawsuit the Department of Justice intends to file. (ECF 183, at 2-3.) Though not entirely clear, it appears Yomi is concerned that the Department of Justice will bring fraud charges against him because he helped Ojo draft his complaint. (*Id.* at 3.) The court, however, focuses its analysis on what discovery is relevant in the case before it, without regard to how such information might be used in subsequent cases. Supposing Yomi communicated with Ojo about what happened to Yomi while he was employed by the FDA—*e.g.,* that employees at the FDA discriminated against, retaliated against, and were hostile to *Yomi* (as opposed to Ojo)—documents reflecting such communication bear on issues in this case and must be produced. On the other hand, Yomi's communications with Ojo that pertain solely to alleged discrimination inflicted on *Ojo* by completely different FDA employees and at a separate FDA job site (which, according to Yomi, is much of the communication (*see* ECF 183, at 6)) are not responsive to the document requests. Therefore, Yomi has no responsibility to produce them.

---

[5] HHS argues Yomi's relevance objections to RFP Nos. 2-4 are invalid because Yomi did not assert them in his initial discovery responses, but instead waited to assert them in his supplemental responses. The court need not decide this waiver argument because the court overrules the objections regardless.

Finally, Becerra asserts that discovery seeking Yomi's communications with third parties about this lawsuit are relevant for another reason: they may reveal information that speaks to Yomi's "credibility and the accuracy of the allegations he has made in this lawsuit." (ECF 172, at 7.) Becerra does not explain how such communication could bear on Yomi's credibility, nor does he discuss how or why Yomi's credibility might be at issue in this lawsuit. In the end, however, the court need not reach a definitive conclusion on this attenuated basis of relevancy given its finding that the requests are relevant to Yomi's substantive claims.

### 2.     RFP No. 21

Becerra's RFP No. 21 sought, "Any and all documents relating to your application, if any, for employment with any employer from 2015 through present, including the job posting, your application, your resume, your cover letter, or any other document submitted in conjunction with your application for employment." (ECF 172-2, at 9.) Yomi originally asserted a number of objections to this request, but ultimately produced responsive job postings and applications. (ECF 172-2, at 9; 183-2; 183-3.) Becerra moves to compel Yomi to fully respond to the request, suggesting that Yomi's current production is incomplete. In response, Yomi asserts that he produced a number of documents and that any further production would not be relevant.

Becerra contends the information sought by RFP No. 21 is relevant to Becerra's affirmative defense that Yomi did not mitigate his damages by seeking other suitable employment for which he was qualified. Specifically, Becerra argues that responsive documents might show Yomi did not have the necessary qualifications for jobs he applied for or did not use reasonable care in seeking and keeping positions he was qualified for. The court finds Becerra has sufficiently articulated the general relevance of Yomi's subsequent employment-application material as it relates to the failure-to-mitigate defense. As currently written, however, Request No. 21 broadly

encompasses documents beyond this material that may not be relevant. Accordingly, the court modifies this request to read:

> Documents sufficient to show other jobs that you applied for from 2015 through present, including the job posting and any application, resume, cover letter, or any other document submitted in conjunction with an employment application.

As narrowed by the court, RFP No. 21 is relevant, and Yomi is ordered to fully respond.

### 3. RFP Nos. 31 and 32

The parties' final dispute over Becerra's RFPs involves RFP Nos. 31 and 32, which seek documents and communications related to Yomi's subsequent job applications that reference his employment with the FDA and the allegations in this lawsuit. (ECF 172-2, at 12.) Yomi argues such discovery about subsequent employment is irrelevant to whether he suffered discrimination and retaliation at the FDA years earlier. However, Becerra explains that Yomi applied for a position with the United States Postal Service ("USPS") in 2017. He was not hired. Yomi then sued the USPS for employment discrimination. Yomi asserted that the USPS retaliated against him by not hiring him after he stated, in response to the USPS's inquiry about his reason for leaving the FDA, that FDA supervisors discriminated against him. It is reasonable to assume other potential or actual employers asked Yomi similar questions and that Yomi responded the same way by discussing the alleged discrimination.

The court agrees with Becerra that documents reflecting what Yomi told subsequent employers or potential employers about the facts underlying his claims in this case meet the definition of relevance because they could bear on, or lead to other matter that could bear on, issues in this case. But the court finds the two requests, as written, are too broad to the extent that they seek "any and all" documents and communications related to Yomi's employment with, and resignation from, the FDA. Currently, these requests would reach such things as Yomi's original

10

FDA application for employment, vacation requests, and other benign documents that have nothing to do with his allegations of discrimination and retaliation. Accordingly, the court modifies these requests to read as follows:

> RFP No. 31: Documents from your employment discrimination matter against the USPS that relate to your claim that individuals employed by the FDA discriminated against you, retaliated against you, or subjected you to a hostile working environment.
>
> RFP No. 32: Documents submitted in connection with any application for employment that relate to your claim that individuals employed by the FDA discriminated against you, retaliated against you, or subjected you to a hostile working environment.

As narrowed by the court, these RFPs are relevant, and Yomi is ordered to fully respond.

### B. Interrogatories

Becerra's motion also asks the court to compel Yomi to respond to Interrogatories 10, 11, 15, 16, and 18. This series of interrogatories asks Yomi to identify specific facts that support each of his claims. For example, Interrogatory 11 reads, "Identify each and every extra assignment that Nadine Nanko provided to you but no other probationary CSO employees and any evidence you have that supports your allegation that she did so due to your race, color, and national origin." (ECF 172-3, at 5.) As to each of these interrogatories, Yomi objected on two grounds: (1) he already provided Becerra documents that answer the interrogatory, and (2) the interrogatory "calls for a legal conclusion."[6] (*Id.*) Becerra moves the court to overrule Yomi's objections and compel him to fully answer the interrogatories.

As to Yomi's first objection, the court finds no support for Yomi's argument that he need not answer the interrogatories because he referred Becerra to records in which Becerra could find

---

[6] The court does not address other objections Yomi asserted in his interrogatory responses but did not reassert in response to the motion to compel. *See* discussion *supra* p. 5.

the answers. For this objection, Yomi appears to be relying on Federal Rule of Civil Procedure 33(d), which permits a party, in certain circumstances, to answer an interrogatory by producing business records and "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify [the answer to interrogatory] as readily as the responding party." Yomi reads Rule 33(d) too broadly. His interrogatory response refers Becerra to an extensive list of documents: to the Equal Employment Opportunity Commission ("EEOC") Report of Investigation ("ROI"), his "Appeal-Brief during the EEOC process, the responses exchanged between the parties during discovery of the EEO[C] process and even during discovery of this current lawsuit, [his] responses and replies to [his] Appeal-Brief and to Defendant's Final Agency Decision during the EEOC Appeal process, the explanation of [his] current 14 claims during this current lawsuit . . . [the] Complaint for discrimination in this current lawsuit regarding this claim, and the 13 page-document of [his] handwritten notes." (*Id.*) This sweeping list of documents does not provide the specificity and level of detail contemplated by Rule 33(d). "[D]irecting the interrogating party to a mass of business records . . . [is] an abuse of the option." FED. R. CIV. P. 33(c) advisory committee's note to 1980 amendment (Subdivision (c) was renumbered to (d) in 1993). Because Yomi has not directed Becerra to specific portions of business records from which Becerra could discern the answer to Interrogatories 10, 11, 15, 16, and 18 as efficiently as Yomi himself, Yomi has not properly answered the interrogatories. His objection on this ground is overruled.

Yomi's second objection, that these interrogatories call for legal conclusions, is also overruled. Rule 33(a)(2) specifically states that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." These interrogatories simply ask Yomi to identify facts that support his legal contentions. Courts

12

have consistently found such interrogatories permissible. *See, e.*g., *McIntyre v. Unified Gov't*, No. 18-2545-KHV, 2021 WL 5918917, at *3 (D. Kan. Dec. 15, 2021) (overruling a "calls for legal conclusion" objection).

Finally, the court rejects Yomi's argument that these interrogatories are premature because he is "still waiting to discover [information] from Defendant in order . . . to be able to answer." (ECF 183, at 10.) The proper way to proceed with discovery is for Yomi to answer the interrogatories based on the information he possesses and then to comply with his Federal Rule of Civil Procedure 26(e) "continuing duty to supplement [his] interrogatory answers as information becomes available." *Id.* (quoting *Riley v. U.S.*, No. 11-2244-EFM, 2012 WL 1231830, at *6 (D. Kan. Apr. 12, 2021)).

Because the court overrules Yomi's objections to Interrogatories 10, 11, 15, 16, and 18, he must answer them fully and completely, without objection and under oath, as discussed more below.

### C.   Verification of Interrogatory Answers

The final portion of Becerra's motion asks the court to compel Yomi to verify each of his interrogatory answers under oath. Yomi objects to providing a verification page for all interrogatory responses in which he asserted an objection, even if he also answered the interrogatory "without waiving [his] objection."

Rule 33(b)(3) provides that, "Each interrogatory must, to the extent it is not objected to, be answered separately and fully under oath." "The plain meaning of this Rule permits a party to raise an objection, then answer the interrogatory without waiving the objection." *Am. Airlines, Inc. v. Delta Air Lines, Inc.,* No. 4:19-CV-01053-O, 2020 WL 8115870, at *3 (N.D. Tex. July 14, 2020); *see also Schipper v. BNSF Ry. Co.,* No. 2:07-CV-02249-JWL, 2008 WL 2358748, at *1

13

(D. Kan. June 6, 2008) ("Where previously the Rule said that if an objection was asserted it would be in lieu of answer, the 1993 amendment provided that the responding party must answer to the extent the interrogatory is not objectionable, despite the objection."). When a party answers subject to his objection, the party *is*, nonetheless, answering. As such, Rule 33(b)(3)'s plain language requires the answer be made under oath. Therefore, the court orders Yomi to verify each of his interrogatory answers under oath—regardless of if they were made subject to his objections.

## IV. CONCLUSION

The court has analyzed the disputed discovery responses and overruled each of Yomi's objections. Yomi is therefore ordered to fully respond to RFP Nos. 2-10 and 26; and to RFP Nos. 21, 31, and 32 as amended by the court. Yomi is further ordered to fully respond, without objection, to Interrogatories 10, 11, 15, 16, and 18, and to produce a verification page for every interrogatory he answered. Yomi must comply with these orders by **June 10, 2022.**

The court cautions Yomi that this production date is firm.[7] Federal Rule of Civil Procedure 41(b) provides for the involuntary dismissal of a case if a plaintiff fails to prosecute or to comply with the Federal Rules or a court order. *See also* FED. R. CIV. P. 37(b)(2)(A)(v) ("If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include the following: ... dismissing the action or proceeding in whole or in part."). In this case, Yomi has developed a pattern of ignoring the court's orders and failing to participate in discovery. As just one example, Yomi has steadfastly refused to appear

---

[7] In setting this deadline, the court has already factored in Yomi's informal request to stay the activities in this case because he was recently injured in a car accident. Yomi's discovery responses have remained deficient for too long. If Yomi wishes to seek to extend this deadline because of his injuries from the car accident, he must follow the procedure set forth in the court's order at ECF 209.

for a deposition. On February 25, U.S. Magistrate Judge James P. O'Hara denied his motion for a protective order setting the place of the deposition. (ECF 128.) Yomi sought review of that ruling, which U.S. District Judge Daniel D. Crabtree denied. (ECF 178.) That should have been the end of the matter, but when Beccera filed a fourth amended notice to take Yomi's deposition (ECF 182), Yomi quickly objected to the notice based on the same arguments the court had already twice rejected (ECF 185). To compound matters, on May 9, Yomi filed a motion for Judge Crabtree to recuse based, in part, on Judge Crabtree's decision upholding Judge O'Hara's order requiring Yomi to sit for a deposition. (ECF 200, at 7.) The court cannot allow Yomi's intransigence to continue. It is disruptive to the orderly and efficient administration of this case. The court therefore warns Yomi that if he fails to timely produce the above discovery, the undersigned judge may recommend that Judge Crabtree dismiss this case.

**IT IS THEREFORE ORDERED** that Becerra's Motion to Compel (ECF 171) is granted. Yomi must respond to the subject discovery on or before **June 10, 2022**.

Dated May 27, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
