`IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FRANCIS YOMI,

    Plaintiff,

    v.

XAVIER BECERRA, in his capacity as
Secretary of Health and Human Services,

    Defendant.

Case No. 21-2224-DDC-ADM

## REPORT AND RECOMMENDATION

    This is an employment-discrimination case brought by pro se plaintiff Francis Yomi ("Yomi") against Xavier Becerra ("Becerra") in his official capacity as Secretary of the U.S. Department of Health and Human Services ("HHS"). The case arises from Yomi's probationary employment with the U.S. Food and Drug Administration ("FDA"), an agency of HHS. This matter is now before the court on Becerra's Motion for Discovery Sanctions. (ECF 221.) By way of this motion, Becerra asks the court to dismiss this case with prejudice as a sanction for Yomi's failure to participate in discovery—namely, his continued refusal to sit for his deposition and his continued failure to comply with a court order compelling him to provide written discovery responses. For the reasons explained below, the court recommends that the district judge grant the motion and dismiss this case with prejudice. Yomi's failure to comply with his discovery obligations has significantly prejudiced Becerra and has interfered with the judicial process by unilaterally grinding this case to a halt despite the court's prior warnings that his noncompliance could result in dismissal. Moreover, his noncompliance has been willful. The court is not persuaded that any lesser sanctions would be effective to prod Yomi into compliance given his established track record of intransigence towards complying with his discovery obligations.

**I.     BACKGROUND**

On May 15, 2021, Yomi filed this action asserting claims for hostile work environment, discrimination based on race and national origin, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. (ECF 1.)  From the start, the case proceeded at a snail's pace because Yomi (unsuccessfully) sought reconsideration and/or review of nearly every initial order.  (ECF 10 (motion for review of order denying appointment of counsel and leave to proceed in forma pauperis), 15 (motion to reconsider order denying motion for review), and 36 (motion for reconsideration of order striking reply to answer).)  Discovery finally began in December of 2021, and Yomi's pattern of impeding case progress continued.

To begin, Yomi opposed Becerra's proposed, blanket protective order to govern the exchange of discovery.  On December 10, Becerra was compelled to file a motion for entry of the court's form protective order.  (ECF 50.)  The court granted the motion, noting that "a protective order is fairly standard practice in employment cases and useful to both parties."  (ECF 74, at 3.)  In a similar vein, Yomi opposed the release of his medical records to Becerra.  Again, Becerra was forced to pursue this fairly standard discovery through a motion to compel, which the court granted.  (ECF 75, 96.)  Yomi delayed providing this discovery, however, by filing motions for the district judge's review, which the district judge denied.  (ECF 87, 102, 131.)  His serial delays in providing this most basic discovery forced Becerra to seek, and the court to grant, an order amending the scheduling order deadlines for the first time.  (ECF 106, 111.)

Next, Yomi began his crusade to resist yet another form of basic discovery: his deposition. Becerra has spent more than seven months trying to depose Yomi.  Although Yomi filed this suit in Kansas, he now lives in Maryland.  On December 30, Becerra emailed Yomi to request dates on which Yomi was available to be deposed in Kansas.  (ECF 113-1, at 8-9.)  Yomi responded that

he "will not come in Kansas" for the deposition. (*Id.* at 8.) Yomi asserted that he did not have the time or money to travel to Kansas and "even if I had money, I would not have spent it for you." (*Id.* at 7.) Becerra then offered to coordinate the deposition with the dates on which Yomi would be in Kansas to gather medical records, a trip that Yomi had planned and disclosed in a December 20 court filing. (*Id.* at 6 (citing ECF 62-1, at 1).) Yomi again informed Becerra, "I will not come in Kansas for helping you in your deposition." (*Id.* at 5.) On January 2, Yomi sent Becerra two additional emails reiterating that he "would not come to Kansas" to be deposed. (*Id.* at 1.)

So when Becerra filed a notice on January 7 to take Yomi's deposition in Kansas City, Kansas (ECF 79), it surprised no one that Yomi challenged the deposition notice. On January 31, Yomi filed a "Motion to have deposition of a party taken within 50 miles of deponent (person who is deposed)'s residence or workplace." (ECF 100.) The court construed the motion as a motion for a protective order setting the deposition within 50 miles of Yomi's residence in Maryland. (ECF 128.) The court denied Yomi's motion, ruling that Yomi had "failed to demonstrate good cause to deviate from the general rule that a plaintiff must make himself available for a deposition in the district where he brought suit." (*Id.* at 1.) Yomi did not "provide an affidavit or specific supporting information to substantiate his claim that traveling to Kansas City for the deposition would be unduly burdensome." (*Id.* at 4.) And although Yomi broadly asserted that he did not have money to travel to Kansas City for the deposition, the court noted that Yomi had recently "informed defendant and the court he planned 'to travel to Kansas, from Maryland . . . to try to get some medical documents.'" (*Id.* (quoting ECF 62-1, at 1).) Thus, the court concluded that Yomi "does have the funds to travel to Kansas, but he simply does not want to use those funds in furtherance of his deposition." (*Id.* (also noting Yomi's representations in his supporting brief that he informed Becerra, "even if I had enough money, I would not still have come in Kansas to be

3

deposed, since I have my own depositions to take . . . and I would have spent that money for those depositions instead").)

Undeterred, Yomi next moved to postpone his deposition (which Becerra had at that time noticed for March 14) for 45 days. (ECF 118.) On February 28, the court denied the motion, finding Yomi had not demonstrated good cause to delay the deposition. (ECF 130.) Pointedly, the court noted that granting Yomi's request "to halt discovery . . . would invite further delays and motion practice in this already slow-moving case." (*Id.* at 4.) That should have been the end of the matter, leading Yomi to sit for his deposition in mid-March. But on March 11 and 14, respectively, Yomi filed motions seeking district judge review of the orders denying his motion for a protective order and motion to postpone his deposition for 45 days. (ECF 142, 143.) And on March 16, Yomi filed an "objection" to the then-applicable notice of his deposition—the third amended notice. (ECF 145.)

During the same time period, Becerra was pursuing written discovery, and Yomi was creating just as much of a stalemate on that front. Yomi's responses to Becerra's First Request for Production of Documents and First Set of Interrogatories asserted a number of improper, conditional, and boilerplate objections, although he did produce some documents and answered some interrogatories subject to those objections. On March 15, Becerra requested a discovery conference to discuss Yomi's incomplete written discovery responses. After postponing the conference once at Yomi's request (ECF 149), the court convened a discovery conference on March 30. (ECF 159.) Based in part on Yomi's tone during the conference, it quickly became apparent that the court would not be able to help the parties resolve their disputes informally. So the court granted Becerra leave to file a motion to compel, which he did on April 7. (ECF 171.)

On April 13, the district judge entered a memorandum and order addressing three of Yomi's motions for reconsideration/review. (ECF 178.) The court (1) denied Yomi's motion for reconsideration of the district judge's memorandum and order denying his motions for review related to the form protective order and his medical records, (2) denied his motion for review of the order denying his motion for a protective order regarding his deposition, and (3) denied his motion for review of the order denying his request to postpone his deposition. The court then addressed a separate request by Becerra to restrict Yomi's use of motions for review and reconsideration. (*Id.* at 5.) The court recognized that Yomi "has filed eight motions for review and three motions for reconsideration in the short life of this case," and noted that "[i]mproper use of motions to reconsider can waste judicial resources and obstruct the efficient administration of justice." (*Id*. (internal quotations and citations omitted).) The court aptly describe Yomi's pattern of over-litigating and unnecessarily protracting this litigation:

> [Yomi] has turned this case into a something of a hydra: every time the court rules a motion, three more appear in its place. Plaintiff's motions make repetitive argument under the guise of "clear error" that, at best, border on frivolous.

(*Id.* at 5-6.) Although the court did not at that time impose filing restrictions on Yomi, the court warned him that sanctions might be warranted if he continued this litigation strategy. (*Id.* at 6.)

Rather than heeding the court's warning, Yomi responded by filing a motion for the district judge to recuse from the case, which the court denied. (ECF 199, 220.) Once again unrelenting, Yomi appealed that denial. (ECF 227, 232.) The Tenth Circuit dismissed the appeal for lack of jurisdiction. (ECF 233.)

Following the district judge's order upholding the orders refusing to relocate or postpone Yomi's deposition, Becerra again emailed Yomi to ask his deposition availability. (ECF 222-2, at 2.) On April 14, Yomi responded that he "would not be available for a deposition" until Becerra

5

produced certain documents, and Yomi declined to provide his availability. (*Id.*) On April 19, Becerra filed a fourth amended notice to take Yomi's deposition. (ECF 182.) On April 25, Yomi filed yet another "objection" to the deposition notice, which included four pages of arguments, rehashing those previously made in his motion for a protective order and motions for review (ECF 185)—all of which the court had already rejected in two court orders.

On May 12, the court convened a status conference to discuss the state of discovery. (ECF 203.) During the conference, the parties confirmed that Yomi still had not sat for his deposition or fully responded to written discovery. In short, Yomi had done very little to keep the discovery schedule set five months earlier. During the hearing, Becerra made an oral motion to extend remaining scheduling-order deadlines. (ECF 204.) The court had little choice but to grant the motion and set a new pretrial schedule. So the court's second amended scheduling order extended discovery deadlines, rescheduled the pretrial conference and the date for submission of the pretrial order, and vacated the trial setting. (ECF 206.) The court urged the parties to work efficiently to timely complete pretrial matters according to the new schedule.

Becerra emailed Yomi later that day and *again* asked Yomi to provide his availability to be deposed. (ECF 222-3, at 1-2.) Yomi *again* responded that he would not come to Kansas for a deposition because he did "not have the money to come." (*Id.* at 1.) Yomi provided no specific facts or evidence to support his claim about the lack of travel expenses. On May 16, Becerra filed a fifth amended notice of Yomi's deposition, setting the deposition for June 10 in Kansas City, Kansas. (ECF 208.)

On May 18, Yomi informally emailed the undersigned's chambers to say that he was injured in a car accident the day before and requested that the court stay his briefing deadlines for pending motions. In response, the court extended Yomi's most immediate deadline, which was

6

for a reply in support of a motion to compel. (ECF 209, at 1.) But, given Yomi's established intransigence to resisting discovery, the court stated that it would "not consider an indefinite stay without a formal motion." (*Id.*) The court required any forthcoming motion to extend or stay deadlines based on Yomi's injuries to "be accompanied by evidence that supports the specific relief he seeks." (*Id.*) The court cautioned that "[w]hatever paperwork [Yomi] elects to provide must include letter(s) by one or more of his treating physicians that provides sufficient detail to explain the specific limitations that prevent Yomi from fully participating in this lawsuit and the anticipated duration (to the extent it can be estimated) of any such limitations." (*Id.*)

On May 27, the court granted Becerra's motion to compel answers to written discovery, with certain document requests narrowed, and ordered Yomi to provide full and complete responses by June 10. (ECF 211.) The court specifically "caution[ed] Yomi that *this production date is firm.*" (*Id.* at 14 (emphasis added).) The court noted that, "[i]n setting this deadline, the court has already factored in Yomi's informal request to stay the activities in this case because he was recently injured in a car accident." (*Id.* at n.7.) The court ruled that because "Yomi's discovery responses have remained deficient for too long," any motion for extension of the production deadline would have to accord with the procedure set out in the court's earlier May 27 order. (*Id.*) The court then discussed Yomi's "pattern of ignoring the court's orders and failing to participate in discovery," and stated that the court "cannot allow Yomi's intransigence to continue." (*Id.* at 14-15.) Thus, the court warned Yomi that if he failed to timely produce the required discovery, the court might recommend that the district judge dismiss this case. (*Id.* at 15 (citing FED. R. CIV. P. 37(b)(2)(A)(v).) Yomi did not produce the written discovery by the "firm" June 10 deadline.

On June 9, Yomi filed "objections" to the fifth amended deposition notice. (ECF 214.) Again, the objections repeated arguments that the court had already twice considered and rejected. Yomi did, however, state "under penalty of perjury" that he did not have a job, had debts of more than $76,000, and did not have enough money to travel to Kansas, which he broadly estimated to cost $1,200. (*Id.* at 2.) Yomi did *not* move to stay the case or his noticed deposition before it began. So, on June 10 at 9:30 a.m., Becerra's counsel convened Yomi's deposition as scheduled. (ECF 222-5.) Yomi did not appear. (*Id.*) After Becerra marked four exhibits for the record, the proceeding concluded at 9:35 a.m. (*Id.*)

Late in the day on June 10, Yomi filed a motion for a 90-day stay of "everything in this lawsuit." (ECF 215, at 1-2.) In support of Yomi's motion, he submitted papers substantiating that a car accident occurred and medical records that supported the court's previous order granting a two-week extension. But the court found that "the papers do not establish that Yomi sustained injuries of the type or severity that would prevent him from participating in discovery and necessitate extending deadlines—aside from the modest extension the court already granted—and certainly not for 90 days." (ECF 219, at 2.) Notably, Yomi did not submit the "letter(s) from one or more of his treating physicians explaining any physical limitations that prevent him from fully participating in this lawsuit and the anticipated duration of any such limitations." (*Id.* at 2-3 (citing ECF 209, at 1).) Accordingly, on June 14, the court denied Yomi's motion to stay the case and extend deadlines—specifically including his request for "an extension of Yomi's deadline to comply with the court's May 27, 2022 order (ECF 211) compelling Yomi to respond to discovery"—but the denial was without prejudice to being renewed with an accompanying physician letter adequately supporting his request. (ECF 219, at 3-4.) The court concluded its order by again observing Yomi's questionable litigation behavior:

8

> [Car accidents] run the spectrum from minor fender benders in which the participants suffer no physical injuries to severe crashes that result in lengthy hospitalizations or, sometimes, even death. The court cannot tell where exactly Yomi's accident falls on this spectrum, but it appears it is closer to the less-serious end of the spectrum. Under these circumstances, this court is not inclined to grant a lengthy extension of case-management deadlines, particularly given Yomi's history of unnecessarily protracting and over-litigating this case with unmeritorious motions and serial objections to complying with the Federal Rules of Procedure and this court's orders.

(*Id.*)

After this order, Yomi still did not produce his written discovery responses. Instead, he waited nearly four weeks and, on July 11, he filed a renewed motion to stay the case. (ECF 223.) This time, his renewed motion included a letter from one of his treating physicians. On July 12, the court denied Yomi's renewed motion. (ECF 225.) The court explained that the letter from Yomi's treating physician did not impose any medical restrictions "that would prevent Yomi from participating in this lawsuit." (*Id.* at 2.) The court further found that Yomi's claims that pain and physical therapy impair his ability to participate in this lawsuit were belied by Yomi's lengthy and voluminous filings. (*Id.* at 2-3.) In summary, the court found that Yomi's continued insistence that he is not capable of participating in this case "is driven more by his intransigence toward complying with his discovery obligations" than any sustained injuries. (*Id.* at 3.)

Yomi seemingly confirmed the court's finding on July 18 when, rather than finally sitting for a deposition or complying with the court's order compelling him to produce written discovery, he filed a 6-page, single-spaced motion for district judge review of the order denying his motion to stay. (ECF 229.)

To date, although Yomi has filed 43 pages of written briefing since his car accident (*see* ECF 214, 215, 223, 226, 227, 229, 232, 234, 235, and 238), there is no indication on the record

9

that Yomi has taken any steps to respond to Becerra's written discovery requests, as the court ordered him to do on May 27. Likewise, his steadfast refusal to appear in Kansas for a deposition, which was first noticed on January 7, continues. The discovery period ended on July 29, with Yomi having succeeded in his apparent strategy of preventing Becerra from obtaining even the most basic discovery necessary to have a fair opportunity to defend against Yomi's claims.

## II.    ANALYSIS

Federal Rule of Civil Procedure 41(b) authorizes the court to involuntarily dismiss a case if "the plaintiff fails to prosecute or to comply with these rules or a court order[.]" *See also Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003) ("[T]he Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders."). Dismissal under this rule generally operates as an adjudication on the merits. *See* FED. R. CIV. P. 41(b). Likewise, other rules provide for dismissal as a sanction when a party refuses to participate in discovery, such as by failing to attend his own deposition or disobeying a court order to provide discovery. *See* FED. R. CIV. P. 37(d)(1)(A)(i) (providing for sanctions when a party fails to attend his own deposition); FED. R. CIV. P. 37(b)(2)(A)(v) (providing for dismissal as a sanction when a party fails to obey an order to provide or permit discovery, among other things); *see also* FED. R. CIV. P. 16(f)(1)(C) (providing for sanctions for failing to obey a scheduling order, including dismissal under Rule 37(b)(2)(A)(v)). "A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules." *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002).

Dismissal is appropriate in cases of willful misconduct. *See Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992). Before imposing dismissal as a sanction, the court considers the

non-exhaustive *Ehrenhaus* factors. *Id*. They include: (1) the degree of actual prejudice to defendants; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id.* at 920-21. "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Id.* at 921. Dismissal with prejudice is warranted when "the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *Id.* In this case, all of the *Ehrenhaus* factors weigh in favor of dismissing Yomi's case with prejudice.

### A. Degree of Actual Prejudice to Becerra

The court turns first to the degree of actual prejudice to Becerra. It is significant. Yomi's refusal to produce discovery has kept Becerra from obtaining "basic information to discern the basis for [Yomi]'s claims." *E. Colorado Seeds, LLC v. Agrigenetics, Inc.*, No. 21-1057, 2021 WL 6102097, at *2 (10th Cir. Dec. 23, 2021) (finding plaintiff's seven-month delay in producing written discovery significantly prejudiced defendant). It is clear from the record that Becerra has spent considerable time and resources trying to coax Yomi into participating in this case. This began with Becerra trying to obtain responses to its discovery requests. Becerra served his initial sets of written discovery in December and January. After Becerra agreed to one extension, Yomi responded to the requests but asserted several objections. Becerra was then forced to file a motion to compel, which the court granted. Yomi has since disobeyed the court order to provide that discovery. The result is that Becerra still has little of the information he sought in *initial* written discovery, including answers to contention interrogatories.

In addition, Becerra has expended significant time and resources attempting to obtain Yomi's deposition. After exchanging multiple emails with Yomi in an attempt to accommodate Yomi's travel schedule to return to Kansas, Becerra had to respond to Yomi's motion asking the court to set the deposition in Maryland. Becerra also endured motion practice on Yomi's motion for a 45-day extension of his deposition date and, when the court denied both of those motions, on Yomi's two motions seeking review. Becerra has now noticed Yomi's deposition five times to account for Yomi's serial motion practice and "objections" to the notices. Based on the fifth notice, Becerra was put to the time and expense of preparing for and attending Yomi's deposition, at which Yomi failed to appear.

Yomi's conduct—namely, his frivolous attempts to challenge court orders and persistent refusal to meaningfully participate in discovery—has stalled this case for months and forced Becerra to expend an inordinate amount of time and resources in responding to non-meritorious motions. The fact that Yomi proceeds pro se and is not incurring the same expenses "only compounds prejudice to the defendant." *Jefferson v. Amsted Rail Co., Inc.*, No. CV 18-2620-KHV, 2020 WL 1672665, at *5 (D. Kan. Apr. 6, 2020).

Further, Yomi's failure to provide meaningful discovery responses throughout the duration of this case has prevented Becerra from exploring basic facts about Yomi's claims and fully developing defenses to those claims. Indeed, Yomi has steadfastly refused to provide even the most basic information, such as the facts that support each of his claims, as requested in Becerra's interrogatories. The extended discovery period has now ended. Yomi's refusal, in turn, has made it virtually impossible for Becerra to prepare his defenses, issue follow up discovery, and prepare a proper dispositive motion.

In sum, Becerra has been significantly prejudiced by having to devote time and expense to responding to unnecessary motion practice and serial objections, as well as by the inability to have a full and fair opportunity to formulate its defenses to Yomi's claims. This factor weighs heavily in favor of sanctions.

### B. Interference with the Judicial Process

Yomi's failure to produce discovery also has significantly interfered with the judicial process. The original scheduling order imposed a discovery deadline of May 31. But that deadline became unworkable when Yomi refused to provide written discovery or sit for his deposition, compounded by his serial motions for review and reconsideration of every discovery order. The court was compelled to convene a status conference on May 12 to discuss the state of discovery. Given Yomi's inaction as of that date (even before his car accident), the court was forced to reset not only the discovery deadline, but also subsequent settings triggered off that deadline, such as the deadline to submit the pretrial order, the date of the final pretrial conference, and the dispositive-motion deadline. (ECF 206.) The court also vacated the trial setting. In an amended scheduling order, the court ordered Yomi to provide full and complete responses to discovery by June 10 and set an overall discovery deadline of July 29. (*Id.*)

Unfortunately, Yomi's intransigence toward participating in discovery has not ended. Discovery has been at a standstill for months because of his failure to participate. Although Yomi has filed multiple motions to stay the case based on his involvement in a car accident on May 17, the court has found them to be largely without merit. The court specifically found that Yomi's medical records and physician letter offered in support of his motion did not identify restrictions "that would prevent Yomi from participating in this lawsuit." (ECF 225, at 2.) Yomi has filed 39 pages of briefing since the accident, but he has not complied with the court's discovery orders. At

13

this point, Yomi has rendered the scheduling order meaningless and unilaterally ground this case to a halt. Meanwhile, the court has expended time and resources taking up Yomi's motions to address his nonparticipation in a case that he appears interested in pursuing only on his own terms, but not if it means also complying with his obligations under the Federal Rules of Civil Procedure and this court's orders. Yomi's actions have undermined the orderly and efficient resolution of this case.

### C. Yomi's Culpability

Yomi is culpable for his conduct. Given his flagrant disregard for participating in this litigation as required, the court has no reason to believe that circumstances beyond his control have prevented him from appearing as required or complying with court orders and procedural rules. Yomi suggests three reasons why his actions are excusable, but none of them hold water.

First, Yomi states he was under no obligation to appear in Kansas for his deposition because the court, in denying his motion for a protective order, did not affirmatively compel him to appear in Kansas. Yomi therefore asserts that sanctions cannot be ordered under Federal Rule of Civil Procedure 37(b) (governing sanctions for failure to obey a discovery order) because he argues that he has not violated a court order. Yomi is correct that the court's order denying his motion for a protective order did not *explicitly* order him to appear in Kansas for his deposition. (ECF 128.) But it is disingenuous to suggest that is not exactly what the order did. The court found Yomi had not overcome the general rule that he must make himself available for examination in the district where he chose to bring suit—*i.e.,* Kansas. (*Id.* at 4.) But in any event, a different rule governs the imposition of sanctions here. Federal Rule of Civil Procedure 37(d) provides for sanctions

14

when a party fails to attend his own deposition "after being served with proper notice."[1] There is no dispute that Becerra's fifth amended notice of Yomi's deposition was proper and that Yomi nonetheless failed to appear. Yomi is wrong to the extent he asserts Becerra was thereafter required to move to compel his attendance. *See Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am.,* 71 F.R.D. 697, 699 (W.D. Okla. 1976) ("The notice issued by Plaintiff is all that is necessary to require attendance of parties or their officers or managing agents and a subpoena was not required."). Yomi made the decision not to comply with the proper notice, and he is culpable for that decision.

Yomi next asserts he does not have money to travel to Kansas to be deposed. He points to his sworn statement in his June 9 "objections" to the fifth amended deposition notice that he does not have a job and is in debt. (ECF 214.) He argues that going to Kansas "would be the very last option" and that there "are many easier options to go with." (ECF 234, at 6.) Specifically, Yomi suggests conducting the deposition remotely. But the court already addressed these arguments. In February, the court ruled that nothing in the *in forma pauperis* statute requires the court or the opposing party to fund Yomi's deposition expenses, and also found that Yomi had not made a particular and specific demonstration that the burden of traveling to Kansas would be undue. (ECF 128, at 5.) The court further ruled that "where the witness to be deposed is the plaintiff in a suit seeking substantial damages, it is reasonable to give defendant 'an opportunity to be "up close and personal" when they assess what kind of witness [plaintiff] might make if this case ever gets to a jury.'" (*Id.* (quoting *Dubuc v. Cox Commc'ns Kan., LLC,* No. 21-2041-EFM, 2021 WL 4050855, at *2 (D. Kan. Sept. 5, 2021)).) And the court upheld those holdings on Yomi's motion for review.

---

[1] Yomi's assertion that Becerra failed to include a Rule 37(d)(1)(B) certification of conferral is incorrect. (*See* ECF 222, at 7.)

(ECF 178.) Yomi has presented no new evidence of either (1) his current financial situation, such as bank statements, or (2) the cost of travel to Kansas, such as a rental-car or bus-ticket estimate. Thus, the court's previous decisions stand.

Finally, Yomi argues he cannot be held responsible for his failure to comply with his discovery obligations because he was injured in a car accident. But the court already addressed this argument—and Yomi's lack of support for it—on multiple occasions. (ECF 209, 211, 219, and 225.) While the court will not repeat itself here, suffice it to say that no stay has been entered in this case. Yomi should be focusing his efforts on actually complying with his discovery obligations rather than devoting so much energy to briefing multiple motions seeking to delay doing so.

Under these circumstances, the court has little trouble concluding that Yomi is culpable for engaging in willful litigation misconduct that has impeded the "just, speedy, and inexpensive" determination of this action. *See* FED. R. CIV. P. 1.

**D.     Previous Warning**

On April 13, the court warned Yomi that he might be sanctioned if he continued to make frivolous, repetitive arguments to try to resist discovery. (ECF 178, at 6.) Then on May 27, the court warned Yomi that he could face sanctions, including dismissal of his case, if he did not comply with the court's directive that he fully respond to Becerra's discovery requests (as amended in part by the court) by June 10. (ECF 211, at 14-15.) Discussing Yomi's written discovery responses and failure to appear for a deposition, the court recognized that "Yomi has developed a pattern of ignoring the court's orders and failing to participate in discovery," and concluded, "The court cannot allow Yomi's intransigence to continue. It is disruptive to the orderly and efficient administration of this case. The court therefore warns Yomi that if he fails to timely produce the

above discovery, the undersigned judge may recommend that Judge Crabtree dismiss this case." (*Id.*) Despite the warning, Yomi did not comply with the court's order compelling discovery. And although Yomi did not file a motion for review or reconsideration between April 13 and July 7 when Becerra filed the current motion for sanctions, Yomi since has filed a motion for review (ECF 229) and a notice of appeal (ECF 232). Becerra's motion for sanctions also put Yomi on notice that he was facing dismissal of his case for his nonparticipation and discovery violations. Yet Yomi still has not budged on his position in which he repeatedly insists that this case must stand still at his say-so or proceed only on his terms.

### E. Efficacy of Lesser Sanctions

Although the court has not previously sanctioned Yomi, the court does not believe that any sanction other than dismissal would be practical or effective. Yomi refuses to sit for a deposition to answer questions about his claims and further refuses to fully respond to written discovery, including answering contention interrogatories. The other Rule 37(b)(2)(A) sanctions available to the court, such as striking Yomi's claims or deeming Becerra's defenses established, would have the same practical effect as dismissal. Moreover, the Tenth Circuit has agreed that "[m]onetary sanctions are meaningless to a plaintiff who has been allowed to proceed *in forma pauperis* and the sanctions set out in Fed. R. Civ. P. 37 will not substitute for plaintiff's failure to appear . . . for his deposition." *Smith v. McKune*, 345 F. App'x 317, 320 (10th Cir. 2009). In sum, the court is unpersuaded that allowing additional time for discovery or imposing any lesser sanction would move this case forward. To the contrary, it would only perpetuate Yomi's intransigence towards complying with his most basic discovery obligations and this court's orders. Such tactics simply are not allowed under the Federal Rules.

## IV. CONCLUSION

In sum, the court finds that the *Ehrenhaus* factors all weigh in favor of dismissal and that Yomi's lack of participation in the discovery process is the result of his willful misconduct. The court therefore recommends that the district judge dismiss this case with prejudice for Yomi's failure to prosecute his case, failure to comply with Rule 30(a)(1) and Rule 37(d)(1)(A) by not appearing for a deposition, and failure to comply with the court's May 27 order to provide discovery. *See* FED. R. CIV. P. 41(b); FED. R. CIV. P. 37(b)(2)(A)(v).

\* \* \* \* \*

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and D. Kan. R. 72.1.4(b), Yomi may file specific written objections to this Report and Recommendation within fourteen days after being served with a copy of it. If objections are not filed within the fourteen-day time period, no appellate review of the factual and legal determinations herein will be allowed by any court. *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE RECOMMENDED** that the district judge grant Becerra's Motion for Discovery Sanctions (ECF 221) and dismiss this case with prejudice.

**IT IS FURTHER ORDERED** that the clerk's office shall send a copy of this Report and Recommendation to Yomi by certified mail, with return-receipt requested.

Dated August 4, 2022, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge